1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

iCall, Inc.,

        Plaintiff,

v.

Reliance Communications Ltd., et al.,

        Defendants.

                               /

NO. C 10-02206 JW

**ORDER DENYING DEFENDANTS'
MOTION TO TRANSFER; GRANTING IN
PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS;
DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

## I.  INTRODUCTION

iCall, Inc. ("Plaintiff") brings this action against Reliance Communications, Ltd. ("RCOM")
and several related Reliance companies,[1] alleging, *inter alia*, trademark infringement pursuant to the
Lanham Act, 15 U.S.C. § 1125, and unfair competition under the California Business & Professions
Code, Cal. Bus. & Prof. Code § 17200.  Plaintiff alleges that Defendants' use of the name "Reliance
iCall" on the Internet to promote voice-over Internet protocol ("VoIP") products results in consumer
confusion, attracting customers by leveraging the goodwill and consumer familiarity associated with
Plaintiff's iCall mark.

---

[1]  Plaintiff also named as Defendants: Reliance Communications (U.K.) Ltd. ("RCUK"),
Reliance Communications International, Inc. ("RCII"), Reliance GlobalCom Services, Inc. ("RGSI")
and relianceicall.com.  (hereafter, along with Defendant RCOM, are collectively referred to as
"Defendants.")

United States District Court

For the Northern District of California

Presently before the Court are (1) Defendants' Motion to Transfer Venue;[2] (2) Defendants RCOM and RCUK's Motion to Dismiss;[3] (3) Defendants RCII and RGSI's Partial Motion to Dismiss;[4] and (4) Plaintiff's Motion for a Preliminary Injunction.[5]  The Court conducted a hearing on September 13, 2010.  Based on the papers submitted to date and oral argument, the Court GRANTS in part and DENIES in part the parties' various Motions.

## II.  BACKGROUND

In a Second Amended Complaint[6] filed on June 22, 2010, Plaintiff alleges as follows:

Plaintiff is incorporated under the laws of the State of Delaware, and registered to do business in California.  (SAC ¶ 5.)  Defendant RCOM is incorporated under the laws of India, with its principal place of business in India.  (Id. ¶ 6.)  Defendant RCII is incorporated under the laws of the State of Delaware and is registered to do business in the State of California.  (Id. ¶ 7.)  Defendant RCUK is incorporated under the laws of the United Kingdom with its principal place of business in London.  (Id. ¶ 8.)  Defendant RGSI is incorporated under the laws of the State of Delaware and is registered to do business in the State of California.  (Id. ¶ 9.)  In rem Defendant relianceicall.com is an Internet domain name which is registered with VeriSign, Inc., located in Mountain View, California.  (Id. ¶ 11.)

Plaintiff is the owner of the iCall trademark, first registered with the USPTO on October 6, 1998.  (SAC ¶ 15.)  Plaintiff offers VoIP services that operate on desktop computers and handheld devices through its icall.com website.  (Id.)  The iCall mark has

---

[2]  (hereafter, "Motion to Transfer," Docket Item No. 30.)

[3]  (hereafter, "RCOM & RCUK's Motion to Dismiss," Docket Item No. 28.)

[4]  (hereafter, "RCII & RGSI's Motion to Dismiss," Docket Item No. 29.)

[5]  (hereafter, "Injunction Motion," Docket Item No. 33.)

[6]  (Second Amended Complaint for Injunctive Relief and Damages for Trademark Infringement, Trademark Dilution, Cybersquatting, and Unfair Competition, hereafter, "SAC," Docket Item No. 19.)

2

become popular because of its efficacy and user-friendliness, especially among iPhone users. (Id. ¶¶ 17-25.)

Plaintiff has never had any business relationship with Defendants, who go by the trade name "Reliance." (SAC ¶ 26.) Defendants use the term "Reliance iCall" on the Internet to promote their VoIP products in competition with Plaintiff. (Id.) Defendants have also registered the domain name "relianceicall.com." (Id. ¶ 28.) Defendants have created an inherently confusing mark, exploiting the resulting consumer confusion to attract customers by usurping the goodwill and consumer familiarity associated with Plaintiff's iCall mark. (Id. ¶¶ 26, 28.)

On the basis of the allegations outlined above, Plaintiff alleges nine causes of action: (1) Violation of the Lanham Act § 32 (15 U.S.C. § 1114); (2) Violation of the Lanham Act § 43 (15 U.S.C. § 1125(a)); (3) Violation of the Lanham Act § 43 (15 U.S.C. § 1125(c)); (4) Violation of the Lanham Act § 43 (15 U.S.C. § 1125(d)); (5) Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.; (6) Violation of Cal. Bus. & Prof. Code § 14245; (7) Violation of Cal. Bus. & Prof. Code § 14247; (8) Violation of Cal. Bus. & Prof. Code § 14415; and (9) Declaratory Relief.

### III.  DISCUSSION

Presently before the Court are the parties' various Motions. The Court addresses each Motion in turn.

**A.**    **Defendants' Motion to Transfer Venue**

Defendants move to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), on the grounds that Defendant RCII is located there and that Plaintiff's headquarters is based in Connecticut. (Motion to Transfer at 1.) Defendants also contend that key witnesses and evidence for both parties are located in or near New York City, whereas California lacks significant connection to the matters alleged in the Complaint. (Id.) Plaintiff contends that transfer of venue to the Southern District of New York is improper, as the suit could not have been

*United States District Court*
For the Northern District of California

3

brought in that district for lack of personal jurisdiction over all Defendants.[7]  In addition, Plaintiff contends that transfer of venue is also improper because most of the witnesses will be located in California, where Defendants' alleged target market and Defendant RGSI is located, rather than New York.  (Id.)

Under 28 U.S.C. § 1404(a), a district court may transfer a case pending before it to "any other district or division where it might have been brought."  To support a motion for transfer, the moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice.  See Goodyear Tire & Rubber Co.  v. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992).  A plaintiff's choice of forum, however, is accorded substantial weight, and a court will not grant a motion under § 1404(a) unless the defendant makes a strong showing of inconvenience.  See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

Here, by moving to transfer pursuant to § 1404(a), Defendants do not dispute that this district is a proper venue.  Thus, Defendants must show that the Southern District of New York is a district where the action might have been brought.  The Court finds that Defendants have not shown that personal jurisdiction would be proper over all named Defendants in New York.  Because Plaintiff contends that the primary market for relianceicall.com is in California,[8] Defendants have failed to show that purposeful availment could be demonstrated for New York.  Moreover, Defendants have failed to show that in rem jurisdiction over allegedly infringing domain name relianceicall.com would be proper in New York under the Anti-Cybersquatting Consumer Protection Act of 1999 ("ACPA"), which allows in rem jurisdiction over a domain name "in the judicial district in which the domain name registry, or other domain name authority that registered or assigned the domain name is located . . . ."  15 U.S.C. § 1125(d)(2)(A).  Thus, the Court finds that Defendants have not

---

[7]  (Plaintiff's Opposition to Defendants' Motion to Transfer Venue, hereafter, "Transfer Opp'n," Docket Item No. 49.)

[8]  (Transfer Opp'n at 5.)

4

1    met their burden to show that the suit could have been brought against all Defendants in the

2    Southern District of New York.[9]

3          Accordingly, the Court DENIES Defendants' Motion to Transfer Venue.

4    **B.    Defendants RCOM and RCUK's Motion to Dismiss**

5          Defendants RCOM and RCUK move to dismiss on the grounds that (1) the Court lacks

6    jurisdiction over them; (2) Plaintiff has failed to properly serve both Defendants; and (3) Plaintiff's

7    Six and Eighth Causes of Action fail to state a claim.  (RCOM & RCUK's Motion to Dismiss 3-12.)

8    The Court addresses each ground in turn.

9          **1.    Lack of Personal Jurisdiction**

10         Defendants RCOM and RCUK move to dismiss on the ground that the Court lacks personal

11   jurisdiction over them.  (RCOM & RCUK's Motion to Dismiss at 3-10.)  Defendants contend that

12   personal jurisdiction over RCOM, a company based in and incorporated under the laws of India, is

13   improper as it does not do business, nor is it registered to do business in California.  (Id. at 3-4.)

14   Further, Defendants contend that RCUK, a company based in and incorporated under the laws of the

15   United Kingdom, is also improper as the company has focused its sales of the Reliance iCall service

16   on customers outside the United States and does not do business in California.  (Id. at 4.)  Plaintiff

17   contends that Defendant RCOM is subject to specific personal jurisdiction in California based on its

18   ownership of the interactive website relianceicall.com, which engages in business with residents of

19   California.[10]  Moreover, RCUK is also subject to specific personal jurisdiction in California,

20   according to Plaintiff, based on its entering into "click wrap" contracts with California residents

21   through the relianceicall.com subscriber agreement.  (Id. at 9-10.)

22   _____

23         [9]   Since the § 1404(a) factors are conjunctive and Defendants have failed show that the
     transferee district is one where the action might have been brought, the Court need not address the
24   third factor for convenience of the parties and witnesses.  However, it is worth noting that
     Defendants have not made a strong showing of inconvenience.  While the location of Defendant
25   RCII may be a factor, Defendants do not identify with sufficient particularity the burden that would
     be imposed by litigating the action in California.
26
          [10]  (Plaintiff's Opposition to the Motion to Dismiss the Second Amended Complaint at 8-10,
27   hereafter, "Dismiss Opp'n," Docket Item No. 48.)

28                                                    5

United States District Court

For the Northern District of California

Motions to dismiss for lack of personal jurisdiction are brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Although the defendant ordinarily files such a motion, it is the plaintiff that bears the burden of proof as to the necessary jurisdictional facts.  Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984).  However, the plaintiff need only make a prima facie showing that personal jurisdiction exists if the defendant files its motion to dismiss as an initial response.  Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  To make a prima facie showing, the plaintiff need only to demonstrate facts that if true would support jurisdiction over the defendant.  Data Disc, 557 F.2d at 1285.  The plaintiff must make a prima facie showing as to each defendant.  Rush v. Savchuk, 444 U.S. 320, 332 (1980).

When a defendant's contacts are not sufficiently systematic and continuous for a court to assert general jurisdiction, the Ninth Circuit uses the following test to evaluate a defendant's contacts for purposes of determining whether specific jurisdiction applies:

> (1)  The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
> (2)  The claim must be one which arises out of or results from the defendant's forum-related activities.
> (3)  Exercise of jurisdiction must be reasonable.

Data Disc, 557 F.2d at 1287.

The Court considers personal jurisdiction as to each Defendant in turn.

### a.    Defendant RCOM

Plaintiff contends that Defendant RCOM is subject to specific personal jurisdiction based on its ownership and operation of the interactive website relianceicall.com to transact business with California citizens.[11]  (Dismiss Opp'n at 8-10.)  Defendants contend that RCOM is merely the

---

[11]  Plaintiff alleges in their Second Amended Complaint that the Court has general jurisdiction over Defendants RCOM and RCUK.  (SAC at 4.)  The Court rejects the theory that the ownership of quasi in rem property within a forum state is enough to establish general personal jurisdiction over a defendant.  See Shaffer v. Heitner, 433 U.S. 186, 189 (1977).  The Supreme Court has held that the location of quasi in rem property within a forum state, in this case a domain name, does not obviate a plaintiff from its obligation to satisfy the standard minimum contacts test to establish personal jurisdiction in comportment with due process.  Id.

domain name registrant and not the "owner" of the site, rather, the Reliance iCall business and its corresponding website is owned by and under the complete control of Defendant RCOM's wholly owned subsidiary, Defendant RCII.  (RCOM & RCUK's Motion to Dismiss at 3-4.)

### i.     Jurisdiction Based on Interactivity of relianceicall.com

At issue is whether relianceicall.com's interactivity is sufficient to establish specific personal jurisdiction over Defendant RCOM.

Traditionally, the operation of an interactive website has been interpreted by courts as subjecting the operator to specific jurisdiction.  Compuserve, Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996).  The Ninth Circuit has adopted the "sliding scale" determination for specific personal jurisdiction's "purposeful availment" prong based on availment of a forum state utilizing the Internet.  The more "interactive" a defendant's website is, the greater the "purposeful availment" of the forum state for purposes of determining specific personal jurisdiction.  Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997).  The focus of the "sliding scale" interactivity analysis is on the amount of data transmission possible between parties using website features and whether the website facilitated data transmissions or business transactions with residents of the forum state.  Id. at 419.  This sliding scale analysis is drawn from the widely-known Compuserve[12] and Bensusan[13] model.

Here, Plaintiff alleges that relianceicall.com is clearly "interactive," as it enables users to enter all of their information to subscribe to the online service, sends a confirmation email to complete subscription, allows payment by credit card through the site and supplies subscribers with downloadable software that they can use to make calls over the Internet.  (SAC at 8-9.)  Although Defendant RCOM does not dispute that it holds the registry for the domain name, Defendant RCOM contends that it is merely the parent company to the actual owner of the Reliance iCall business.  Rather, it is Defendant RCII, Defendant RCOM's wholly-owned subsidiary, who it claims has actual

---

[12] 89 F.3d at 1257.

[13] Bensusan Restaurant Corp. v. King, 937 F. Supp. 295 (S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997).

United States District Court

For the Northern District of California

possession and control over the website.  (RCOM & RCUK's Motion to Dismiss at 3-4.)  In light of the dispute over who is the actual operator of relianceicall.com, the Court finds that jurisdictional discovery may be appropriate.

### ii.  Jurisdiction Based on Domain Name Registry

In the alternative, Plaintiff contends that the Court can assert personal jurisdiction over Defendant RCOM based solely on the fact that the domain name registry of relianceicall.com is physically located in this district.  (Dismiss Opp'n at 8.)  Specifically, Plaintiff contends that the recent Ninth Circuit holding in <u>Zuccarini</u> establishes that domain names are property in the forum state that the domain name registry is physically located and, therefore, could be used as a basis to determine satisfaction of the minimum contacts test.  <u>Office Depot Inc. v. Zuccarini</u>, 596 F.3d 696 (9th Cir. 2010).

In <u>Zuccarini</u>, the Ninth Circuit relied on the language of ACPA, which defined statutorily that the situs of a domain name is in the district where the registry is located, to hold that the location of domain names for *quasi in rem* jurisdiction under California law is also the registry's district.  <u>Id.</u> at 703.  In so doing, the <u>Zuccarini</u> court held that "domain names are personal property located wherever the registry or registrar is located."  <u>Id.</u> at 702.  Thus, domain names are located at the site of their registry for *quasi in rem* jurisdiction.  <u>Id.</u>  However, the <u>Zuccarini</u> court specifically stated that locating a domain name for the purpose of attaching *quasi in rem* jurisdiction was "a legal fiction" and that the location of intangible property would necessarily vary "depending on the purpose to be served . . . ."  596 F.3d at 702.  In fact, "[a] single piece of intangible property may be located in multiple places for some purposes."  <u>Id.</u>  This "legal fiction" would doubtfully provide the level of notice required by the Due Process Clause to allow its use in proper satisfaction of the minimum contacts test.

Thus, the Court finds that Plaintiff's reliance on <u>Zuccarini</u> is misplaced.  Moreover, Plaintiff's interpretation of <u>Zuccarini</u> is in conflict with the Ninth Circuit's holding in <u>Panavision</u> that registration of a domain name and posting a website at that domain name would be insufficient in itself to establish personal jurisdiction, and that it would clearly require "something more."

8

Panavision v. Toeppen, 141 F.3d 1316 (9th Cir. 1998). In Panavision, the Ninth Circuit affirmed the district court's finding of specific personal jurisdiction over a defendant who registered the domain name panavision.com in Illinois and then enacted a scheme to obtain $13,000 from Panavision, a California company, for the domain name. Id. at 1318. The Ninth Circuit based its affirmation on the fact that, in addition to registration of a domain name and posting a website, the defendant had done "something more" in satisfaction of the "effects doctrine."

> We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another.[14] As we said in Cybersell, there must be "something more" to demonstrate that the defendant directed his activity toward the forum state. Id.

Here, Plaintiff has alleged that beyond being the registered owner of the domain name relianceicall.com, Defendant RCOM has achieved the "something more" requirement through its control of the relianceicall.com website and all of its subsidiary businesses, located in California and doing business with California citizens. (Dismiss Opp'n at 8-10.) Defendants dispute that there is a greater relationship between it and Defendant RCII other than principle and subsidiary. (RCOM & RCUK's Motion to Dismiss at 3.) Moreover, Defendant RCOM disputes that it has any control or involvement with the relianceicall.com website. (Id. at 4.) Thus, the Court finds that the extensive factual disputes over relationships between affiliated companies, involvement with the Internet business and divided website ownership in this case warrant jurisdictional discovery.

Accordingly, the Court DENIES Defendants' Motion to Dismiss for Lack of Personal Jurisdiction over Defendant RCOM as premature and without prejudice. The Court GRANTS Plaintiff's request for jurisdictional discovery.[15]

### b.   Defendant RCUK

Plaintiff contends that personal jurisdiction is proper over Defendant RCUK based on Defendant's formation of "click-wrap" agreements with all of Reliance iCall subscribers prior to

---

[14]  (citing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997)).

[15]  In its Opposition, Plaintiff also seeks an order excluding a prior, non-binding arbitration decision from evidence based on Federal Rules of Evidence 401, 802 and 403. (Dismiss Opp'n at 19-20.) The Court DENIES Plaintiff's request as premature.

9

**United States District Court**
For the Northern District of California

1  August 19, 2010.  (Dismiss Opp'n at 9-10.)  Defendants contend that the identification of Defendant

2  RCUK as the entity with which "click-wrap" agreements were formed was in error and has

3  subsequently been corrected.  (RCOM & RCUK's Motion to Dismiss at 4.)  Defendant RCUK

4  further contends that, other than the terms of service listing, it does not offer Reliance iCall services

5  to customers in the United States, nor does it do business in California, have offices in California,

6  have any real property in California or have an agent registered for service in California.  (Id.)

7  Similar to Defendant RCOM, the Court finds that extensive factual disputes over mistaken "click-

8  wrap" agreements and divided website ownership warrant jurisdictional discovery.

9      Accordingly, the Court DENIES Defendants' Motion to Dismiss for Lack of Personal

10  Jurisdiction over Defendant RCUK as premature and without prejudice.  The Court GRANTS

11  Plaintiff's request for jurisdictional discovery.

12      **2.      Lack of Service**

13      Defendants RCOM and RCUK also move to dismiss the Second Amended Complaint on the

14  ground that they were not personally served.  (RCOM & RCUK's Motion to Dismiss at 10-12.)

15  Plaintiff contends that it effected service on Defendants RCOM and RCUK through Plaintiff's

16  service on Defendant RGSI.  (Dismiss Opp'n at 14-16.)

17      Federal courts cannot exercise jurisdiction over a defendant without proper service of

18  process.  Omni Capital Int'l, Ltd. v. Wolff & Co., 484 U.S. 97, 104 (1987).  Insufficient service can

19  result in dismissal.  Fed. R. Civ. P. 12(b)(5).  "Once service is challenged, plaintiff[] bear[s] the

20  burden of establishing that service was valid under [Rule] 4."  Brockmeyer v. May, 383 F.3d 798,

21  801 (9th Cir. 2004).

22      Service on a foreign corporation may be accomplished in the manner prescribed by Federal

23  Rule of Civil Procedure 4(e)(1) for serving an individual.  Fed. R. Civ. P. 4(h)(1)(A).  Rule 4(e)(1)

24  further explains that process may be served in accordance with state law "in the state where the

25  district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  California Code of Civil

26  Procedure, in turn, provides that process may be served on a corporation by delivering a copy of the

27  summons and the complaint to, among others, certain corporate officers or as provided in California

28

10

**United States District Court**
For the Northern District of California

Corporations Code § 2110.   Cal. Civ. P. Code § 416.10(b).   Finally, California Corporations Code § 2110 provides that service can be made on any "general manager in this state."   Cal. Corp. Code § 2110.

A "general manager" includes "any agent of the corporation 'of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.'"   Gibble v. Car-Lene Research, Inc., 78 Cal. Rptr. 2d 892, 904 (Cal. Ct. App. 1998) (quoting Eclipse Fuel Engineering Co. v. Sup. Ct., 148 Cal. App. 2d 736, 745-46 (Cal. Ct. App. 1957)).   Whether an entity constitutes a corporation's "general manager" in California depends on the facts of the case.   Cosper v. Smith & Wesson Arms Co., 53 Cal. 2d 77, 83 (Cal. 1959).   In Cosper, for example, the California Supreme Court held that a California representative of a Massachusetts gun manufacturer constituted the manufacturer's "general manager" for service purposes.   Id. at 84.   The relationship between the manufacturer and its California representative was limited to a contract for the representative to promote the sale of the manufacturer's guns based on commission.   Id. at 80. There was no formal corporate relationship, no control over employees and no assistance (other than the furnishing of advertising materials) between the two parties.   Id. at 80-81.   Nonetheless, the court found that this arrangement provided the out-of-state manufacturer with substantially the same business advantages it would have enjoyed if it had opened its own California office.   Id. at 84.

In this case, the Court finds that Defendant RGSI is a "general manager" of Defendants RCOM and RCUK for service purposes.   First, it is undisputed that Defendant RGSI is a wholly-owned subsidiary of Defendant RCOM, and that Defendant RGSI's website prominently displays the Reliance iCall logo at issue in this case.[16]   Second, Plaintiff's Complaint alleges that Defendant RGSI provides Defendant RCOM with "[sales], advertising, customer contacts, and a continuous flow of business in the State of California."   (SAC ¶ 9.)   Although Defendant RGSI may not be authorized to do business on behalf of RCOM or RCUK, that level of corporate formality is not required.   Rather, the question is whether the parties' relationship makes it reasonably certain that

---

[16] (Defendants RCOM and RCUK's Reply Brief in Support of their Motion to Dismiss at 9, hereafter, "Reply Dismiss," Docket Item No. 51.)

11

United States District Court

For the Northern District of California

1  Defendants will be notified of the service.[17]  Here, Defendants do not deny that Defendant RGSI

2  promptly notified Defendants RCOM and RUCK that it had been served.[18]  (Reply Dismiss at 9-10.)

3          Accordingly, the Court DENIES Defendants RCOM and RCUK's Motion to Dismiss for

4  Lack of Service.

5          **3.      Failure to State a Claim**

6          Defendants RCOM and RCUK move to dismiss Plaintiff's Sixth and Eighth Causes of

7  Action on the ground that Plaintiff fails to state an actionable claim.  (RCOM & RCUK's Motion to

8  Dismiss at 12.)  Defendants RCII and RGSI join in the Motion.  (RCII & RGSI's Motion to Dismiss

9  at 1-2.)

10         Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against

11  a defendant for failure to state a claim upon which relief may be granted.  Dismissal may be based

12  on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

13  cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990);

14  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).  For purposes of

15  evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be

16  true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los

17  Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of

18  the pleading.  Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

19         However, mere conclusions couched in factual allegations are not sufficient to state a cause

20  of action.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845

21  F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief

22  that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is

23  plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

24  _____

     [17]  See Halo Elecs., Inc. v. Bel Fuse Inc., No. C-07-06222 RMW, 2010 U.S. Dist. LEXIS

25  64025, at *5 (N.D. Cal. June 14, 2010).

26         [18]  See, e.g., Khachatryan v. Toyota Motor Sales, U.S.A., Inc., 578 F. Supp. 2d 1224, 1227

27  (C.D. Cal. 2008) (the fact that a Japanese corporation was actually put on notice as a result of
     service on American distributor supported finding of "general manager" status).

28

reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1129 (9th Cir. 2000).

### a.    Plaintiff's Sixth Cause of Action

Defendants move to dismiss Plaintiff's Sixth Cause of Action for a violation of Cal. Bus. & Prof. Code § 14245 on the ground that Plaintiff does not have a California trademark.  (RCOM & RCUK's Motion to Dismiss at 12.)

Cal. Bus. & Prof. Code § 14245 prohibits use, "without the consent of the registrant, [of] any reproduction, counterfeit, copy, or colorable imitation of a mark *registered under this chapter* in connection with the sale, distribution, offering for sale, or advertising of goods or services . . . ." Cal. Bus. & Prof. Code § 14245 (emphasis added).  Thus, to state a claim under this statute, a plaintiff must have registered its trademark with the State of California. <u>Id.</u>

Here, the parties do not dispute that Plaintiff does not have a California state trademark registration.  (RCOM & RCUK's Motion to Dismiss at 12; Dismiss Opp'n at 18.)  Based on Plaintiff's concession that it does not currently have a California trademark, the Court finds that Plaintiff does not have standing to pursue a § 14245 claim.  However, Plaintiff contends that it has now submitted the iCall mark for registration with the California Secretary of State, and requests that the Court grant it leave to re-file after the registration has been obtained.  (Dismiss Opp'n at 18.)

Accordingly, the Court GRANTS Defendants' Motions to Dismiss Plaintiff's Sixth Cause of Action with leave to amend after Plaintiff obtains its California registration.

### b.    Plaintiff's Eighth Cause of Action

Defendants move to dismiss Plaintiff's Eighth Cause of Action on the ground that Cal. Bus. & Prof. Code § 14415 does not create a private right of action.  (RCOM & RCUK's Motion to Dismiss at 12.)  Plaintiff contends that Cal. Bus. & Prof. Code § 14402 and

**United States District Court**
For the Northern District of California

§ 14415 together provide for the right to an injunction for trademark infringement.  (Dismiss Opp'n at 18.)

Under the California Trade Name Statute, Cal. Bus. & Prof. Code §§ 14400-14416, the first entity to file articles of incorporation and use the corporate name set forth in those articles is entitled to a presumption that it has an exclusive right to use that name within California.  "Section 14402, [in turn], provides for injunctive relief for violations of the rights set out in the statute."  Accuride International, Inc. v. Accuride Corp., 871 F.2d 1531, 1539-40 (9th Cir. 1989); see also Mallard Creek Industries, Inc. v. Morgan, 65 Cal. Rptr. 2d 461, 466 (Cal. Ct. App. 1997).  Cal. Bus. & Prof. Code § 14415 further provides a "presumption applicable to articles of incorporation and certificates of qualification."

Here, although improperly entitled "Violation of Cal. Bus. & Prof. Code § 14415," Plaintiff's Eighth Cause of Action specifically alleges that "Plaintiff is entitled to injunctive relief pursuant to California Business and Professions Code §§ [sic] 14402."  (SAC ¶ 122 (emphasis added).)  Defendants do not contest that § 14402 does in fact provide a private cause of action.[19]

Accordingly, the Court DENIES Defendants' Motions to Dismiss Plaintiff's Eighth Cause of Action.

**C.      Plaintiff's Motion for a Preliminary Injunction**

Plaintiff moves for a preliminary injunction on the ground that Defendants' use of the Reliance iCall mark allegedly creates customer confusion with Plaintiff's federally-registered iCall mark.  (Injunction Motion at 13.)  Specifically, Plaintiff seeks an Order enjoining Defendants from: (1) using the iCall mark alone or in combination with other words; (2) using the mark Reliance iCall in an Internet domain name, or in any other medium; (3) using any representations of fact in connection with its products which are likely to cause confusion; and (4) using the iCall mark to label, identify, promote, advertise, sell or offer any products or services in interstate commerce.

---

[19]  (Reply Dismiss at 10.)

United States District Court

For the Northern District of California

(See id., Ex. 5 at 2.)  Defendants contend, among other things, that Plaintiff cannot prove likelihood of success because consumers are not confused between the parties' two marks.[20]

A preliminary injunction is a provisional remedy, the purpose of which is to preserve the status quo and to prevent irreparable loss of rights prior to final disposition of the litigation.  Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).  It is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 375-76 (2008).  A plaintiff seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.  Id. at 374.  If a plaintiff cannot establish likelihood of success on the merits, the trial court should deny a plaintiff's motion for a preliminary injunction.  Id.

To prevail on the merits of its trademark infringement action, a plaintiff must show: (1) ownership of an enforceable right in a trademark; and (2) that a defendant's use of the mark creates a likelihood of consumer confusion.  Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985).  Here, the parties do not dispute that Plaintiff registered and owns the iCall mark.  The Court therefore focuses its inquiry as to whether or not Defendants' use of the Reliance iCall mark creates a likelihood of customer confusion.

In determining whether or not there is a likelihood of confusion, a court weighs the following factors: (1) similarity of the marks; (2) proximity of the goods; (3) marketing channels used; (4) the strength of the mark; (5) evidence of actual confusion; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendants' intent in selecting the mark; and (8) the likelihood of expansion of the product lines.  See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).  In the Internet context, the first three factors are the most important in

---

[20]  (Defendants' Opposition Regarding RCOM and RCUK's Motion to Dismiss the Second Amended Complaint, and RCII and RGSI Motion to Dismiss the Second Amended Complaint at 1, hereafter, "Injunction Opp'n," Docket Item No. 47.)

15

determining likelihood of confusion.  <u>Perfumebay.com Inc. v. eBay Inc.</u>, 506 F.3d 1165, 1173 (9th Cir. 2007).

### 1.        Similarity of the Marks

At issue is whether the marks are similar.

"The similarity of the marks will always be an important factor."  <u>Brookfield Commc'ns., Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1054 (9th Cir. 1999).   The court assesses the relevant marks as they appear in full in the marketplace, judging similarity by the marks' appearance, sound and meaning.  <u>Id.</u>

Here, the marks at issue appear as follows:

   

The Court finds that although iCall is completely incorporated into Defendants' mark, Plaintiff has not shown sufficient similarity between the two marks to support its claim for a preliminary injunction.  First, as to appearance, Plaintiff's mark appears on one line in blue and white text, whereas Defendants' mark appears on two lines, with a stylized "RELIANCE" displayed prominently on top in bold font, and the "iCall" term in white text only with a different font.  Second, the marks also do not sound the same because the additional word "Reliance" is used in Defendants' mark.[21]   The addition of "Reliance" also could impart a different meaning to some customers, as it is the first term in the mark.[22]  Thus, the Court finds that this factor does not weigh in Plaintiff's favor.

---

[21]  <u>See, e.g.</u>, <u>Entrepreneur Media v. Smith</u>, 279 F.3d 1135, 1145 (9th Cir. 2002) (adding "Illustrated" to "Entrepreneur" mark could create a "noticeable" difference because it made the defendant's mark "twice as long - to the eye and the ear").

[22]  <u>See, e.g.</u>, <u>Gruner + Jahr USA Publishing, Div. of Gruner + Jahr Printing & Publishing Co. v. Meredith Corp.</u>, 991 F.2d 1072, 1078 (2d Cir. 1993) (defendant's "Parents Digest" mark was not sufficiently similar to plaintiff's "Parents" mark to tip the scales towards the issuance of a preliminary injunction).

16

**2.      Proximity of the Goods and the Degree of Care Likely to be Exercised by the Purchaser**

At issue is the proximity of the parties' goods and whether consumers are likely to associate their products.

Related goods are generally more likely than unrelated goods to confuse the public. Brookfield, 174 F.3d at 1055-56.  In evaluating the proximity of the goods, a court must focus on consumers and ask whether they are likely to associate the two products.  Id.  Similarly, the sixth Sleekcraft factor focuses on the type of the two goods involved and the degree of care likely to be exercised by the purchaser.  Maxim Integrated Prods., Inc., v. Quintana, 654 F. Supp. 2d 1024, 1035 (N.D. Cal. 2009)

Here, the parties do not contest that they both offer Internet calling services.  (Injunction Motion at 17; Injunction Opp'n at 16.)  Defendants, however, contend that they target individual Indian expatriate consumers that use other Reliance products, whereas Plaintiff targets both individuals and businesses.  (Injunction Opp'n at 16, 17.)  Even assuming these differences, both parties sell their services in the same specific field of VoIP products.  Since the parties' services are both sold over the Internet, Internet consumers are likely to exercise less effort in distinguishing between products.  Thus, the Court finds that these factors weigh in favor of Plaintiff.

**3.      Marketing Channels Used**

Plaintiff contends that both parties "utilize the Internet as the primary marketing channel for VoIP services."  (Injunction Motion at 17.)  Defendants respond that the parties target different consumers through different websites inside the Internet forum.  (Injunction Opp'n at 16.)

The use of "convergent marketing channels" increases the likelihood of consumer confusion. Sleekcraft, 599 F.2d at 353.  Here, although it is true that both parties use the "Internet" for their marketing, the "Internet" may be an overbroad designation for companies that sell Internet calling services.  See, e.g., Quia Corp. v. Mattel, Inc., No. 10-1902 JF, 2010 U.S. Dist. LEXIS 68237 at *27 (N.D. Cal. June 15, 2010) ("Though both products are marketed and sold on the Internet, this fact,

1   without more, is insufficient to demonstrate that this factor supports a finding of consumer

2   confusion.")

3         Here, within the Internet, it is undisputed that iCall primarily markets its products on the

4   Apple store website, and that Defendants do not have an application for the iPhone or iPod.  Plaintiff

5   also does not dispute Defendants' contention that the Reliance iCall service is primarily marketed to

6   current Reliance customers through links on affiliated Reliance websites and through targeted

7   customer communications.  Thus, the Court finds that this factor does not weigh in Plaintiff's favor.

8         **4.      The Strength of the Mark**

9         Plaintiff contends that their iCall mark is suggestive, and has been "strengthened by such

10  factors as extensive advertising, length of exclusive use, and public recognition."  (Injunction

11  Motion at 18.)  Defendants respond that "iCall" is a descriptive term that exists in a crowded field.

12  (Injunction Opp'n at 8-12.)

13        "The strength of a mark is determined by its placement on a continuum of marks from

14  'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection;

15  to 'arbitrary' or 'fanciful,' awarded maximum protection."  E. & J. Gallo Winery v. Gallo Cattle

16  Co., 967 F.2d 1280, 1291 (9th Cir. 1992) (citation omitted).  If the plaintiff's mark is weak,

17  consumers are less likely to be confused.  Id.  Moreover, where a plaintiff's mark resides in a

18  crowded field, the mark loses some of its strength, and it is less likely that consumers will be

19  confused.  Halo Mgmt. LLC v. Interland, Inc., 308 F. Supp. 2d 1019, 1036-37 (N.D. Cal. 2003)

20  (denying plaintiff's motion for a preliminary injunction, and noting that plaintiff would have

21  difficulty establishing likelihood of confusion between their "HALO" mark and defendant's

22  "BLUEHALO" mark because the field was crowded).

23        Here, Defendants have submitted documentary evidence that shows that the term iCall is in

24  widespread use for similar goods and services, such as "iCallGlobe," "iCall Anywhere," and "iCall

25  International."[23]  Thus, the Court finds that this factor does not weigh in Plaintiff's favor.

26  ─────────────────

27        [23]  (Declaration of Rachel Hofstatter in Support of Defendants' Opposition to Plaintiff's
    Motion for a Preliminary Injunction, Ex. C, Docket Item No. 47.)

28                                                18

United States District Court

For the Northern District of California

**5.      Evidence of Actual Confusion**

Plaintiff contends, citing a metrics report, that it has actual evidence of confusion because the ReelianceiCall.com website currently derives a majority of its search engine traffic from Internet visitors who are searching for the term 'iCall.'"  (Injunction Motion at 19; see also Declaration of Arlo Gilbert in Support of Plaintiff's Motion for a Preliminary Injunction, Ex. 11, Docket Item No. 33.)

While evidence of actual confusion is not required, it "constitutes persuasive proof that future confusion is likely."  Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 902 (9th Cir. 2002).

Here, Defendants counter that Plaintiff's algorithm search data report is not actual confusion evidence, as it does not show that the use of two marks has led to confusion.  (Injunction Opp'n at 15.)  Defendants further contend that Plaintiff has failed to present any study showing a single customer was actually confused by the two marks.  Based on the parties' conflicting contentions, the Court finds that this factor is neutral.

**6.      Defendants' Intent in Selecting the Mark**

Plaintiff contends that Defendants intentionally chose the Reliance iCall name to benefit from Plaintiff's goodwill.  (Injunction Motion at 18.)

"This factor favors the plaintiff where the alleged infringer adopted [its] mark with knowledge, actual or constructive, that it was another's trademark."  Brookfield, 174 F.3d at 1059 (citation omitted).  "[T]his factor is only relevant, [however], to the extent that it bears upon the likelihood that consumers will be confused by the alleged infringer's mark."  Id.  Where a defendant knowingly adopts a mark similar to another's, the court may presume an intent to deceive.  Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir. 1993).

Here, in support of its contention, Plaintiff relies on: (1) a LinkedIn.com resume of one of Defendants' employees, stating that the company "studied the competition" to develop the relianceicall.com website; and (2) the fact that Reliance has not registered its Reliance iCall mark in the United States.  (Id.)  Defendants respond that its use of the Reliance iCall mark is consistent with

1  its past branding activities, and that Plaintiff's contentions as to bad faith are purely speculative.

2  (Injunction Opp'n at 17-18.)  Based on such a minimal record, the Court cannot determine

3  Defendants' intent at this time.  Thus, the Court finds that this factor is neutral.

4        **7.        Likelihood of Expansion of the Product Lines**

5        This factor is essentially irrelevant where the conflicting marks are already being used in the

6  same market for nearly identical goods.  <u>Maxim</u>, 654 F. Supp. 2d at 1034.  Here, the parties do not

7  dispute that nearly identical VoIP goods and services are involved.  (Injunction Motion at 19;

8  Injunction Opp'n at 2-3.)  Thus, the Court finds that this factor is neutral.

9        In its evaluation of several of these factors, Plaintiff relies on <u>Maxim</u> and <u>Perfumebay</u> to

10  support its contention that consumers would likely be confused.  These cases are distinguishable.  In

11  <u>Maxim</u>, the Court found the defendant's "My-iButton" mark to be similar to the plaintiff's "iButton"

12  mark.  654 F. Supp. 2d at 1024.  This case is inapposite because the Court in <u>Maxim</u> found that the

13  addition of the term "my" did not change the meaning of the mark.  <u>Id.</u> at 1031-32.  Moreover, the

14  Court found that Maxim's mark was strong.  <u>Id.</u> at 1033.  Finally, unlike here, there was no evidence

15  in <u>Maxim</u> that the term "iButton" was used extensively by others in the relevant industry.  <u>Id.</u>

16  <u>Perfumebay.com</u> is also distinguishable.  506 F.3d at 1174.  The Ninth Circuit in <u>Perfumebay.com</u>

17  found that the first three <u>Sleekcraft</u> factors weighed heavily in the plaintiff's favor.  <u>Id.</u> at 1174-75.

18  Here, Plaintiff has not established that its and Defendants' marks were substantially similar, nor that

19  the parties used the same marketing channels.

20        On balance, the Court finds that the <u>Sleekcraft</u> factors do not weigh in Plaintiff's favor.

21  However, nothing in this Order is intended to foreclose Plaintiff's ability to prove likelihood of

22  confusion at a later stage of the litigation.

23        Accordingly, the Court DENIES Plaintiff's Motion for a Preliminary Injunction.

24                        **IV.  CONCLUSION**

25        The Court GRANTS in part and DENIES in part the parties' various Motions as follows:

26        (1)        Defendants' Motion to Transfer is DENIED;

27

28                                        20

**United States District Court**
For the Northern District of California

    (2)     Defendants RCOM and RCUK's Motion to Dismiss is GRANTED in part and DENIED in part as follows:

        (a)    Motion to Dismiss for Lack of Personal Jurisdiction is DENIED without prejudice;

        (b)    Motion to Dismiss for Lack of Service is DENIED;

        (c)    Motion to Dismiss Plaintiff's Sixth Cause of Action is GRANTED with leave to amend; and

        (d)    Motion to Dismiss Plaintiff's Eighth Cause of Action is DENIED.

    (3)     Plaintiff's Motion for a Preliminary Injunction is DENIED.

The Court GRANTS Plaintiff jurisdictional discovery as to Defendants RCOM and RCUK and sets the following schedule:

    (1)     The parties shall complete jurisdictional discovery on or before **December 3, 2010.**

    (2)     Once jurisdictional discovery is completed, the parties shall appear for an Interim Case Management Conference on **December 13, 2010 at 10 a.m.**

    (3)     On or before **December 3, 2010**, the parties shall file a Joint Case Management Conference Statement. The Statement shall include, among other things, undisputed facts defining the relationships between and among the various entities named as Defendants in the Complaint, and their ownership, control and operation of the relianceicall.com domain name, the relianceicall.com website (including creation, maintenance and ownership of files), the server on which relianceicall.com is housed, the Reliance iCall software, any telecommunications networks used in the Reliance iCall business and the Reliance iCall business itself.

Dated: September 16, 2010

_____
JAMES WARE
United States District Judge

**United States District Court**
For the Northern District of California

1

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2
Charles Carreon chas@charlescarreon.com
Dylan Ruga druga@steptoe.com
3
Michael Richard Heimbold mheimbold@steptoe.com
Michael Allan mallan@steptoe.com
4
Rachel M. Hofstatter rfofstatter@steptoe.com

5

**Dated: September 16, 2010**                    **Richard W. Wieking, Clerk**

6

7                                                    **By:    /s/ JW Chambers**
                                                         **Elizabeth Garcia**
8                                                        **Courtroom Deputy**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28